977 F.2d 573
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Shirley L. RIGGS, Plaintiff-Appellant,
v.
METROPOLITAN LIFE INS. CO., an authorized insurance company
in the State of West Virginia; Bell Atlantic
Corporation, Defendants-Appellees.
 No. 92-1257.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 6, 1992
Decided: September 25, 1992
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Richard L. Williams, District Judge. (CA-90-99-C)
 ARGUED: Stephen Alan Wickland, Clarksburg, West Virginia, for Appellant.
 Sandra Dorothy Parker, New York, New York, for Appellee Metropolitan Life; Joseph E. Ronan, Philadelphia, Pennsylvania, for Appellee Bell Atlantic.
 ON BRIEF: William J. Toppeta, New York, New York, for Appellee Metropolitan Life.
 N.D.W.Va.
 Affirmed.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this action by a widow, Shirley Riggs, to recover life insurance proceeds under an ERISA qualified supplemental group life insurance plan from her deceased husband's employer, Bell Atlantic, and its plan underwriter, Metropolitan Life Insurance Company (Met Life), the district court granted summary judgment to the defendants on the grounds that Robert Riggs, the deceased employee, had failed to meet coverage requirements under the plan. Shirley Riggs appeals, and we affirm.
 
 
 2
 * Under Bell Atlantic's company-sponsored Supplemental Group Life Insurance Plan (the "Plan") an employee could elect coverage in one of two ways, depending on when he decided to join: (1) by signing up within 31 days of becoming eligible for the Plan,[1] at which time coverage begins ("open enrollment"); or (2) after expiration of the open enrollment period, by submitting evidence of good health satisfactory to Met Life, the underwriter of the Plan, with coverage beginning at that time only if the employee is also then actively at work. J.A. at 61. Robert Riggs did not sign up to join the Plan during the open enrollment period; consequently, he was required to apply for coverage, submit evidence of good health satisfactory to Met Life, and be actively at work at the time Met Life accepted his application in order for coverage to become effective.
 
 
 3
 On October 16, 1988, Mr. Riggs submitted to C & P Telephone his application to participate in the Plan. Part A of the application, the employer's statement, was completed by Charles Jacobs, Mr. Riggs's supervisor, on October 25, 1988. On that date, Mr. Riggs was not actively at work at C & P Telephone. Mr. Jacobs indicated on Part A of the application that Mr. Riggs last worked on October 21, 1988, when he was injured on the job. Mr. Riggs never returned to work after that date.
 
 
 4
 On Part B of the application, the employee's statement and evidence of good health, Mr. Riggs indicated that he was taking medication for hypertension and that earlier he had been diagnosed as having kidney disease. Mr. Riggs also indicated that he had been examined for both conditions at the Veterans Administration Hospital in Clarksburg, West Virginia, and he authorized Met Life to obtain his medical records from the hospital.
 
 
 5
 Mr. Riggs's application was not submitted to Met Life until January 1989, when it was reviewed to determine whether Mr. Riggs was insurable under the Plan. On January 24, 1989, Met Life requested Mr. Riggs's medical records from the Veterans Administration Hospital in Clarksburg. Met Life received the medical records in March 1989. The records revealed that Mr. Riggs had a history of hypertension and that he had been issued a wheelchair for home use. Based on this information, Met Life concluded that Mr. Riggs should undergo a medical examination to determine whether he was insurable. Although requested to undergo a medical examination, Mr. Riggs never did.
 
 
 6
 On May 8, 1989, Met Life learned that on October 31, 1988, Mr. Riggs was diagnosed with amyotrophic lateral sclerosis, more commonly known as Lou Gehrig's disease. On May 12, Met Life determined that Mr. Riggs was uninsurable because he failed to provide satisfactory evidence of good health and the insurance company rejected his application. Met Life informed Mr. Riggs of the denial of coverage on May 16. Mr. Riggs, by counsel, appealed and Met Life, after reviewing the case, upheld its initial decision to deny coverage.
 
 
 7
 Mr. Riggs died in February 1990. Shirley Riggs, his widow, brought suit against Bell Atlantic and Met Life in state court, alleging breach of contract. Met Life removed the case to federal court, arguing ERISA preemption. The district court agreed that ERISA preempted Mrs. Riggs's state-law claims and allowed her to amend her complaint to state an ERISA cause of action. After Mrs. Riggs amended her complaint to state a violation of ERISA as well as additional state-law claims, the district court granted summary judgment for Bell Atlantic and Met Life. This appeal followed.
 
 II
 The district court found that the Plan
 
 8
 clearly provides that coverage will become effective for those applying outside the open enrollment period"only on the date that your evidence of good health is accepted as satisfactory by the insurance company, and when you are actively at work." Bell Atlantic Benefits Manual for NonManagement Employees, at 120 (emphasis added) ... Mr. Riggs never returned to work after October 21, 1988. Therefore, under the terms of the Plan, even if his application had been accepted, Mr. Riggs would never have become covered by it. As such, Mrs. Riggs could never have become a beneficiary and, therefore, has no right to benefits under the Plan.
 
 
 9
 J.A. at 129. Mrs. Riggs makes no argument on appeal that successfully counters the district court's disposition of the case. Her principal argument rests on the "Who Is Eligible" section of the summary plan description.[2] That section states, "If you are a regular, term, full-time or part-time employee with six months of Net Credited Service, you are eligible for supplementary life insurance offered under this Plan." J.A. at 61. On October 16, 1988, the day Mr. Riggs filled out his part of the Plan application, he, by the terms of the"Who Is Eligible" section of the summary plan description, was eligible to participate in the Plan. Therefore, Mrs. Riggs argues, Mr. Riggs was covered by the Plan.
 
 
 10
 Mrs. Riggs argues, in effect, that coverage under the Plan is automatic once the eligibility requirements are met. To accept this argument would make the rest of the summary plan description, particularly the "How to Join / When Coverage Begins" section immediately following the "Who Is Eligible" section, of no relevance to the Plan. We cannot accept such a tortured reading of what is otherwise clear and unambiguous in the Plan. The "How to Join / When Coverage Begins" section clearly states that
 
 
 11
 [i]f you do not enroll for optional Supplementary coverage within 31 days after becoming eligible ... your Supplementary coverage will become effective only on the date that your evidence of good health is accepted as satisfactory by the insurance company, and when you are actively at work. A medical examination may be required by the insurance company.
 
 
 12
 J.A. at 61. This provision, "written in language calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a)(1), unambiguously puts employees who are eligible for the Plan on notice that if they sign up after the 31-day open enrollment period, they must satisfy the "evidence of good health" and "actively at work" requirements in order for coverage to become effective-neither of which Mr. Riggs was able to meet, Mrs. Riggs's arguments to the contrary notwithstanding.
 
 
 13
 With respect to good health, Mrs. Riggs argues that Mr. Riggs was in good health, to his knowledge, at the time he submitted his application for the Plan. The application, however, indicated otherwise. Mr. Riggs noted in Part B of the application that he suffered from hypertension and a kidney disorder, both of which were diagnosed and treated at the Veterans Administration Hospital in Clarksburg, West Virginia. Mrs. Riggs next argues, it would appear, that Met Life was required either to accept or reject this information as satisfactory evidence of good health without further inquiry, even though the summary plan description clearly indicates that "[a] medical examination may be required by the insurance company." A medical examination was so required of Mr. Riggs, but he never took one.
 
 
 14
 The sad truth of the matter, we must conclude, is that Mr. Riggs failed to make a satisfactory showing of good health. Even had he done so, coverage still would not have become effective because he was not actively at work at any time after applying for the Plan, which meant that coverage under the Plan could never become effective. It was on the basis of this "actively at work" requirement that the district court granted summary judgment in favor of Met Life and Bell Atlantic. On appeal, Mrs. Riggs argues that the "actively at work" clause is ambiguous. We disagree. The summary description explicitly provides that being actively at work is a precondition to coverage under the Plan. Again, the unambiguous language used in the summary description is "coverage will become effective only on the date that your evidence of good health is accepted as satisfactory by the insurance company, and when you are actively at work." J.A. at 61 (emphasis added).
 
 
 15
 The failure either to have one's evidence of good health accepted as satisfactory or to be actively at work was enough to prevent coverage under the Plan from becoming effective. Mr. Riggs failed in both respects, and so was never covered by the Plan.[3] We have considered Mrs. Riggs's arguments to the contrary and find them meritless. We therefore affirm the order of the district court granting summary judgment in favor of Bell Atlantic and Met Life.
 
 AFFIRMED
 
 
 [1]
 Regular, term, full-time, or part-time employees with six months of "Net Credited Service" are eligible to participate in the Plan
 
 
 [2]
 ERISA requires that the summary plan description be written "in a manner calculated to be understood by the average plan participant" and be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Moreover, the summary plan description must give notice of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Id. § 1022(b)
 
 
 [3]
 The claim was made by Mrs. Riggs, both in the district court and on appeal, that payroll deductions for supplemental life insurance had been taken from Mr. Riggs's salary every week until Mr. Riggs died on February 17, 1990. It is clear from documentary evidence, however, that no such deductions were ever made. A supplemental insurance block appears on the earnings statements of all employees, regardless of whether they are participating in the Plan. When an employee elects supplemental life insurance coverage and is enrolled in the Plan, the amount of supplemental insurance elected appears in the supplemental insurance block on the earnings statement. No amounts ever appeared in the supplemental insurance block of Mr. Riggs's earning statements. Compare J.A. at 165 (earnings statements of Mr. Riggs; no amount shown in supplemental insurance blocks) with J.A. at 167 (earnings statements of Plan participants; amounts shown in supplemental insurance blocks)
 The district court considered and properly rejected this argument.